UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MICHAEL CASHIN,                          )   Case No. EDCV 09-161 JC
                                         )
                    Plaintiff,           )
                                         )   MEMORANDUM OPINION
         v.                              )
                                         )
MICHAEL J. ASTRUE,                       )
Commissioner of Social                   )
Security,                                )
                                         )
                    Defendant.           )
_____

I.    **SUMMARY**

         On February 2, 2009, plaintiff Michael Cashin ("plaintiff") filed a
Complaint seeking review of the Commissioner of Social Security's denial of
plaintiff's application for benefits. The parties have filed a consent to proceed
before a United States Magistrate Judge.

         This matter is before the Court on the parties' cross motions for summary
judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The
Court has taken both motions under submission without oral argument. See Fed.
R. Civ. P. 78; L.R. 7-15; February 4, 2009 Case Management Order ¶ 5.

///

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED. The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.[1]

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On February 22, 2005, and March 4, 2005, plaintiff filed applications for Supplemental Security Income benefits and Disability Insurance Benefits. (Administrative Record ("AR") 47, 196-98, 427-29). Plaintiff asserted that he became disabled on July 31, 2004, due to lyme disease, rheumatoid arthritis, and degenerative disc back and hip disease.[2] (AR 218). The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert on November 21, 2006. (AR 79-102). On January 31, 2007, the ALJ determined that plaintiff was not disabled through the date of the decision ("Pre-Remand Decision"). (AR 47-54).

On October 1, 2007, the Appeals Council granted review, vacated the ALJ's Pre-Remand decision, and remanded the matter for further administrative proceedings. (AR 38-41). The ALJ again examined the medical record and heard testimony from plaintiff (who was represented by counsel), a medical expert and a vocational expert on January 8, 2008,[3] and June 23, 2008. (AR 103-35).

---

[1]The harmless error rule applies to the review of administrative decisions regarding disability. See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196 (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of application of harmless error standard in social security cases).

[2]Although the application for Supplemental Security Income benefits states that plaintiff's disability began on December 1, 2003, the application for Disability Insurance Benefits and the parties' cross-motions reflect that plaintiff's alleged onset date is July 31, 2004. (AR 196, 427; Plaintiff's Motion at 1; Defendant's Motion at 1).

[3]Following the January 8, 2008 hearing, the ALJ ordered consultative psychological and neurological examinations of plaintiff. (AR 105).

On July 21, 2008, the ALJ, incorporating by reference the Pre-Remand Decision, determined that plaintiff was not disabled during the relevant periods of disability applicable to plaintiff's case ("Post-Remand Decision").[4] (AR 13-22). Specifically, the ALJ found that, during the relevant periods of alleged disability: (1) plaintiff suffered from the following severe impairments: osteoarthritis of the bilateral hips and lumbar spine (AR 15); (2) plaintiff's impairment or combination of impairments did not meet or medically equal one of the listed impairments (AR 16); (3) plaintiff could perform a reduced range of light work, with some nonexertional limitations (AR 16);[5] (4) plaintiff could not perform his past relevant work (AR 20-21); (5) there are jobs that exist in significant numbers in the national economy that plaintiff could perform (AR 21-22); and (6) plaintiff's allegations regarding his limitations were not credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment (AR 18).

The Appeals Council denied plaintiff's application for review on November 28, 2008. (AR 5-7).

///

///

///

[4]Based on plaintiff's additional applications for Supplemental Security Income benefits and Disability Insurance Benefits on or about April 11, 2007, plaintiff was found to be disabled beginning on February 2, 2007, due to an affective (mood) disorder. (AR 13, 160). Therefore, only two "relevant periods" were considered in the ALJ's Post-Remand Decision: (1) the period from July 31, 2004, through February 1, 2007, for plaintiff's application for Supplemental Security Income; and (2) the period from July 31, 2004, through June 30, 2005, (the date plaintiff was last insured) for plaintiff's application for Disability Insurance Benefits. (AR 13, 22).

[5]Specifically, the ALJ determined that during the relevant periods, plaintiff: (i) could lift and/or carry 20 pounds occasionally and 10 pounds frequently; (ii) could stand and/or walk for 6 hours out of an 8-hour workday; (iii) could sit for 6 hours out of an 8-hour workday; (iv) could occasionally balance, stoop, kneel, crouch, crawl, and climb stairs; (v) was precluded from climbing ladders, ropes, and scaffolds; (vi) could perform simple to complex verbal instructions and tasks; (vii) had mild difficulty tolerating the workweek; and (viii) had mild difficulty interacting with people in the workplace. (AR 16).

**III. APPLICABLE LEGAL STANDARDS**

    **A.    Sequential Evaluation Process**

To qualify for disability benefits, a claimant must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1)    Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2)    Is the claimant's alleged impairment sufficiently severe to limit his ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3)    Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

(4)    Does the claimant possess the residual functional capacity to perform his past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

(5)    Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow him to adjust to other work that exists in

significant numbers in the national economy?  If so, the

claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

**B.     Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

///

///

///

# IV. DISCUSSION

## A. The ALJ Properly Evaluated the Opinions of Plaintiff's Treating Physician

### 1. Pertinent Law

In Social Security cases, courts employ a hierarchy of deference to medical opinions depending on the nature of the services provided. Courts distinguish among the opinions of three types of physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," namely those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians"). Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted). A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion.[6] See id. In general, the opinion of a treating physician is entitled to greater weight than that of a non-treating physician because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989)). Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal

---

[6]Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to draw bright line distinguishing treating physicians from non-treating physicians; relationship is better viewed as series of points on a continuum reflecting the duration of the treatment relationship and frequency and nature of the contact) (citation omitted).

quotations omitted).  The ALJ can reject the opinion of a treating physician in favor of another conflicting medical opinion, if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.  <u>Id.</u> (citation and internal quotations omitted); <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by setting out detailed and thorough summary of facts and conflicting clinical evidence, stating his interpretation thereof, and making findings) (citations and quotations omitted); <u>Magallanes</u>, 881 F.2d at 751, 755 (same; ALJ need not recite "magic words" to reject a treating physician opinion – court may draw specific and legitimate inferences from ALJ's opinion).  "The ALJ must do more than offer his conclusions."  <u>Embrey v. Bowen</u>, 849 F.2d 418, 421-22 (9th Cir. 1988).  "He must set forth his own interpretations and explain why they, rather than the [physician's], are correct."  <u>Id.</u>  "Broad and vague" reasons for rejecting the treating physician's opinion do not suffice.  <u>McAllister v. Sullivan</u>, 888 F.2d 599, 602 (9th Cir. 1989).

Although the treating physician's opinion is generally given more weight, a nontreating physician's opinion may support rejecting the conflicting opinion of a claimant's treating physician.  <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995).  If a nontreating physician's opinion is based on independent clinical findings that differ from the findings of the treating physician, the nontreating physician's opinion may be considered substantial evidence.  <u>Id.</u> at 1041 (citing <u>Magallanes</u>, 881 F.2d at 751).  If that is the case, then the ALJ has complete authority to resolve the conflict.[7]  On the other hand, if the nontreating physician's opinion contradicts the treating physician's opinion but is not based on independent clinical findings, or is based on the clinical findings also considered by the treating physician, the ALJ can only reject the treating physician's opinion

---

[7]Where there is conflicting medical evidence, the Secretary must assess credibility and resolve the conflict.  <u>Thomas</u>, 278 F.3d at 956-57.

by giving specific, legitimate reasons based on substantial evidence in the record. Id. (citing Magallanes, 881 F.2d at 755); see Magallanes, 881 F.2d at 751-52 (Substantial evidence that can support the conflicting opinion of a nonexamining medical advisor can include:  laboratory test results, contrary reports from examining physicians, and testimony from the plaintiff that is inconsistent with the treating physician's opinions.).

### 2.    Pertinent Facts

An April 23, 2003 x-ray reflects that plaintiff had "mild degenerative changes about the lumbar spine at the L3-4 level." (AR 274).

On May 4, 2005, Dr. Diane L. Cordrey, a consultative state agency psychologist, performed a complete psychological evaluation of plaintiff, which included a mental status evaluation and objective psychological testing.[8]  (AR 287-93).  Based on her examination of plaintiff and the results of the objective testing, Dr. Cordrey opined that plaintiff:  (i) had intellectual functioning in the average range; (ii) had a mild visual memory impairment; (iii) had a history of polysubstance abuse; (iv) had no significant cognitive or emotional limitations; (v) could perform simple, repetitive and more complex skills; (vi) had adequate reasoning skills to avoid normal hazards; (vii) could interact appropriately with others, including authority figures; and (viii) could concentrate adequately to sustain regular activity for eight hours per day with normal breaks.  (AR 292-93).

On May 16, 2005, a non-examining, state agency psychiatrist reviewed plaintiff's medical records and concluded that plaintiff had "no significant cognitive or emotional limitations." (AR 300).  In May 2005, a non-examining, state agency psychiatrist completed a Psychiatric Review Technique form in which the psychiatrist concluded that plaintiff had no medically determinable mental

///

_____

[8]Dr. Cordrey administered the following tests:  Bender-Gestalt Test-II; Trails A and Trails B; Wechsler Adult Intelligence Scale-III; and Wechsler Memory Scale-III.  (AR 287).

impairment. (AR 309). On July 8, 2005, a state agency reviewing psychiatrist determined that plaintiff's mental condition was not severe. (AR 52, 310-11).

Between March 20, 2007 and October 2, 2007, Dr. Amador, plaintiff's treating physician, and other healthcare professionals at the Riverside County Department of Mental Health ("RCDMH"), treated plaintiff approximately every eight weeks for a mood disorder and depression. (AR 356-65, 380-83). Plaintiff was prescribed Cymbalta, an antidepressant, which stabilized his symptoms when he was compliant with treatment and abstained from drug and alcohol abuse. (AR 356, 359, 360-62, 365, 380-83). Mental status examinations during that period were essentially unremarkable. (AR 356, 359-62, 383). On March 20, 2007, Dr. Amador assessed plaintiff with a current GAF score of 45, and a high GAF during the prior year of 45-50.[9] (AR 380).

At the January 8, 2008 hearing before the ALJ, Dr. William DeBolt, a board certified psychologist and neurologist, testified as a medical expert. (AR 30, 116-21, 128-34). Dr. DeBolt reviewed plaintiff's medical records and considered plaintiff's testimony from the November 21, 2006 hearing. (AR 128-31). Dr. DeBolt testified: Plaintiff had no limitations other than those related to degenerative arthritis of the hips and back. (AR 128-31). Further testing by a neurologist and a psychologist was in order. (AR 134). The ALJ left the record open for such testing to be conducted. (AR 105, 134).

On February 28, 2008, Dr. Harrell Reznick, a consultative state agency psychologist, performed a complete psychological evaluation of plaintiff, which ///

---

[9]A GAF score is a clinician's judgment of an individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), 32 (4th ed. 2000). A GAF score between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM-IV at 32.

included a mental status evaluation and objective psychological testing.[10]  (AR 405-12).  Based on his examination of plaintiff, the results of objective testing, and a review of plaintiff's medical records, Dr. Reznick opined:  plaintiff (i) could perform simple and repetitive tasks with minimal supervision, and with appropriate persistence and pace over a normal work cycle; (ii) was able to understand, remember and carry out at least simple to moderately complex verbal instructions without difficulty; (iii) would experience mild difficulties tolerating ordinary work pressures; and (iv) would experience mild difficulties interacting with others in the workplace.  (AR 411-12).  Dr. Reznick's report does not reflect that plaintiff had experienced any episodes of decompensation.

On March 6, 2008,[11] Dr. Amador completed a psychiatric re-assessment form for plaintiff, in which Dr. Amador opined that plaintiff had:  (i) a diagnosis of mood disorder and depression; (ii) a current GAF score of 50, with a high GAF within the past year of 50-55; (iii) feelings of worthlessness and guilt; (iv) insomnia, decreased ability to concentrate, and fatigue/loss of energy; (v) a depressed mood from constant pain; (vi) guilty feelings because plaintiff missed his children but was unable to do the papers necessary to see them; and (vii) anxiety when in stores and closed spaces.  (AR 416).  A mental status examination completed as part of the psychiatric re-assessment reflected that plaintiff (i) had psychomotor slowing but behavior that was generally normal; (ii) was alert and oriented to person, place, time and purpose, but had poor concentration and memory due to chronic pain; (iii) was depressed with affect

---

[10]Dr. Reznick administered the following tests:  Test of Memory Malingering; Wechsler Adult Intelligence Scale-III; and Wechsler Memory Scale-III.  (AR 405).

[11]The parties, apparently based on Dr. Amado's dated signature on a page which follows, but does not appear to be part of Dr. Amador's psychiatric re-assessment form, indicate that the re-assessment occurred on February 2, 2008.  (Plaintiff's Motion at 3; Defendant's Motion at 2-3).  However, the first page of the psychiatric re-assessment form reflects that the date of service was March 6, 2008.  (AR 415).  Accordingly, the Court uses the latter date.

appropriate to mood; (iv) had normal thought processes, congruent mood, and no delusions or hallucinations; and (v) had an average general fund of knowledge, and fair insight, judgment, and impulse control. (AR 418).

At the June 23, 2008 hearing before the ALJ, Dr. DeBolt testified that he had reviewed the report of the consultative examination conducted by Dr. Reznick and concluded that the findings therein suggested no limitations beyond those related to degenerative arthritis of the hips and back, as stated in a May 16, 2005 residual functional capacity assessment by a state agency reviewing physician. (AR 105-107) (citing Exhibit 11F [AR 301-308]).

### 3. Analysis

Plaintiff contends that the ALJ improperly rejected Dr. Amador's March 6, 2008 opinions. (Plaintiff's Motion at 3-4). The Court concludes that a remand or reversal is not warranted on this basis because the ALJ properly rejected Dr. Amador's opinions for specific and legitimate reasons supported by substantial evidence.[12]

---

[12]Preliminarily, the Court notes that Dr. Amador did not provide treatment at any time during the relevant periods of plaintiff's alleged disability, and prepared his medical opinions significantly after the end date of such relevant periods. (AR 334-54, 356-65, 367-79, 380-90, 392-93, 414-19, 421, 423). Thus, the ALJ was entitled to give little or no weight to Dr. Amador's retrospective opinions to the extent such opinions were inconsistent with other substantial evidence in the record from within the relevant periods (*e.g.*, Dr. Cordrey's consultative examination which found that plaintiff had no cognitive or emotional limitations), and could properly disregard such opinions without detailed explanation. See Freeman v. Apfel, 208 F.3d 687, 691 (8th Cir. 2000) (Where treating physician's evidence "did not pertain to [claimant's] condition during the relevant period [of disability] and was inconsistent with other substantial evidence that did pertain to the relevant period, the ALJ was under no obligation to give [the treating physician's] opinion controlling weight.") (citations omitted); see also Lind v. Commissioner of Social Security, 2008 WL 4370017, at *14 (S.D. Cal. Sept. 24, 2008) (same; citing id.); Klett v. Barnhart, 303 F. Supp. 2d 477, 484 (S.D.N.Y. 2004) ("[A] retrospective diagnosis from a physician, particularly one who was not the claimant's treating physician during the relevant time period, may carry less weight if the diagnosis is inconsistent with other substantial evidence in the record.") (citing, *inter alia*, 20 C.F.R. § 404.1527(d)(4)); see also Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (An ALJ must provide an explanation only when he rejects "significant probative evidence.") (citation omitted).

First, an ALJ may properly reject a medical opinion that conflicts with the physician's own treatment notes or the record as a whole. <u>Connett v. Barnhart</u>, 340 F.3d 871, 875 (9th Cir. 2003) (treating physician's opinion properly rejected where treating physician's treatment notes "provide no basis for the functional restrictions he opined should be imposed on [the claimant]"); <u>see</u> <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001) (ALJ need not accept treating physician's opinions that are conclusory and brief, or unsupported by clinical findings, or physician's own treatment notes). Here, as the ALJ noted, Dr. Amador's opinions that plaintiff suffered significant cognitive limitations conflicted with Dr. Amador's own mental status examinations of plaintiff which "reflect[ed] essentially no problems," and were otherwise unsupported by clinical findings and the medical opinion evidence. (AR 19, 356, 359-62, 383). Moreover, Dr. Amador's progress notes reflect that plaintiff's condition remained stable on his medication, and that plaintiff only needed treatment every 8 weeks . (AR 18-19, 356, 359-62, 365, 380-83). Dr. Amador's failure to order more aggressive treatment or medication suggests that plaintiff's limitations were not as significant as stated in the treating physician's opinions. <u>Cf</u>. <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered, as part of credibility evaluation, treating physician's failure to prescribe, and claimant's failure to request, medical treatment commensurate with the "supposedly excruciating" pain alleged, and the "minimal, conservative treatment") (citing <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 346 (9th Cir. 1991) (en banc)); <u>see</u> <u>Fair v. Bowen</u>, 885 F.2d 597, 604 (9th Cir. 1989) (ALJ permissibly considered discrepancies between the claimant's allegations of "persistent and increasingly severe pain" and the nature and extent of treatment obtained).

Second, as the ALJ noted, Dr. Amador's progress notes reflect that at times plaintiff had not been compliant with his prescribed medication, and plaintiff also had not always been forthright with Dr. Amador regarding his drug and alcohol

use. (AR 19). To the extent Dr. Amador's opinions were based on plaintiff's subjective complaints, which the ALJ properly found not entirely credible (AR 18), such opinions were likewise properly discounted. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (ALJ properly rejected opinion of treating physician which was based solely on subjective complaints of claimant and information submitted by claimant's family and friends); Fair, 885 F.2d at 605 ("The ALJ [] disregarded [physician's] opinion because it was premised on [plaintiff's] own subjective complaints, which the ALJ had already properly discounted. This constitutes a specific, legitimate reason for rejecting the opinion of a treating physician.")

Finally, the ALJ properly rejected Dr. Amador's opinions in favor of the conflicting opinions of the consultative examining psychologists, the reviewing psychiatrists, and the testifying medical expert – all of whom found no mental limitations beyond those already accounted for in the ALJ's residual functional capacity assessment. (AR 19, 105-107, 292-93, 300, 309, 310-11, 411-12). The opinions of Drs. Cordrey and Reznick were supported by each examining psychologists' independent clinical findings, and thus constituted substantial evidence upon which the ALJ could properly rely to reject the treating physician's opinions. See, e.g., Tonapetyan, 242 F.3d at 1149 (consultative examiner's opinion on its own constituted substantial evidence, because it rested on independent examination of claimant); Andrews, 53 F.3d at 1041. The opinions of the state agency reviewing psychiatrists, and testimony from the medical expert also constitute substantial evidence supporting the ALJ's decision since they are consistent with the examining psychologists' opinions and underlying independent examinations. See Tonapetyan, 242 F.3d at 1149 (holding that opinions of nontreating or nonexamining doctors may serve as substantial evidence when consistent with independent clinical findings or other evidence in the record); Andrews, 53 F.3d at 1041 ("reports of the nonexamining advisor need not be

discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it"); Morgan, 169 F.3d at 600 (testifying medical expert opinions may serve as substantial evidence when "they are supported by other evidence in the record and are consistent with it"). Any conflict in the properly supported medical opinion evidence is the sole province of the ALJ to resolve. Andrews, 53 F.3d at 1041.

Accordingly, a remand or reversal is not warranted on this basis.[13]

## B. The ALJ Properly Evaluated the Severity of Plaintiff's Impairments

### 1. Pertinent Law

At step two of the sequential evaluation process, plaintiff has the burden to present evidence of medical signs, symptoms and laboratory findings[14] that

---

[13]Plaintiff suggests that the ALJ improperly rejected all of Dr. Amador's opinions based on the ALJ's statement that the physician's opinions "do not speak directly to her [sic] work capacity over a consecutive 12 month period or longer," and asserts that the ALJ should have developed the record further if the ALJ was unclear whether Dr. Amador's opinions would satisfy the Social Security durational requirement. (Plaintiff's Motion at 3-4) (citing AR 19). Plaintiff takes the ALJ's statement out of context. The ALJ's statement did not, as plaintiff suggests, indicate that he had rejected all of Dr. Amador's opinions for failing to meet the Social Security durational requirement. Instead, the ALJ simply noted that Dr. Amador's opinions regarding plaintiff's GAF scores could be rejected because evidence of a claimant's GAF scores is not probative of a plaintiff's ability to work for any period of time during the relevant periods. See 65 Fed. Reg. 50746, 50764-65 (August 21, 2000) ("[The GAF scale] does not have a direct correlation to the severity requirements in our mental disorder listings."); McFarland v. Astrue, 288 Fed. Appx. 357, 359 (9th Cir. 2008) (ALJ's failure to address GAF scores specifically did not constitute legal error) (The Court may cite unpublished Ninth Circuit opinions issued on or after January 1, 2007. See U.S. Ct. App. 9th Cir. Rule 36-3(b); Fed. R. App. P. 32.1(a).); see also Purvis v. Commissioner of Social Security Administration, 57 F. Supp. 2d 1088, 1093 (D. Or. 1999) (noting absence of Ninth Circuit authority presented to suggest that GAF score of 50, by itself, required finding of disability); Howard v. Commissioner of Social Security, 276 F.3d 235, 241 (6th Cir. 2002) (rejecting claimant's argument that ALJ improperly failed to consider GAF score in assessing residual functional capacity).

[14]A medical "sign" is "an anatomical, physiological, or psychological abnormality that can be shown by medically acceptable clinical and laboratory diagnostic techniques[.]" Ukolov,
(continued...)

establish a medically determinable physical or mental impairment that is severe, and that can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Ukolov v. Barnhart, 420 F.3d 1002, 1004-1005 (9th Cir. 2005) (citing 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D)); see 20 C.F.R. §§ 404.1520, 416.920. Substantial evidence supports an ALJ's determination that a claimant is not disabled at step two where "there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment." Id. (quoting SSR 96-4p, 1996 WL 374187, at *1-*2).

Step two is "a de minimis screening device [used] to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). Applying the normal standard of review to the requirements of step two, a court must determine whether an ALJ had substantial evidence to find that the medical evidence clearly established that the claimant did not have a medically severe impairment or combination of impairments. Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (citation omitted); see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here."). An impairment or combination of

[14](...continued)
420 F.3d at 1005 (quoting Social Security Ruling ("SSR") 96-4p, 1996 WL 374187, at *1 n.2) (Social Security rulings are binding on the Administration. See Terry v. Sullivan, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990). Such rulings reflect the official interpretation of the Social Security Administration and are entitled to some deference as long as they are consistent with the Social Security Act and regulations. Massachi v. Astrue, 486 F.3d 1149, 1152 n.6 (9th Cir. 2007)) A "symptom" is "an individual's own perception or description of the impact of his or her physical or mental impairment(s)[.]" Id. (quoting SSR 96-4p, 1996 WL 374187, at *1 n.2); see also 20 C.F.R. §§ 404.1528(a)-(b), 416.928(a)-(b). "[U]nder no circumstances may the existence of an impairment be established on the basis of symptoms alone." Ukolov, 420 F.3d at 1005 (citation omitted); SSR 96-4p, 1996 WL 374187, at *1-2 ("[R]egardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings.").

15

impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." Webb, 433 F.3d at 686 (citation omitted).

## 2. Additional Pertinent Facts

In a September 4, 2007 narrative report, Dr. Amador opined, in pertinent part, that plaintiff: (i) was confused and depressed; (ii) could not maintain a sustained level of concentration; (iii) could not sustain repetitive tasks for an extended period; (iv) could not adapt to new or stressful situations; and (v) had a "guarded" prognosis. (AR 393, 423).

The ALJ did not find that plaintiff had a severe mental impairment at step two of the sequential evaluation process for the following reasons:

> As noted in the prior decision dated January 31, 2007, [plaintiff] is depressed at times and he has some memory problems, but there is no objective evidence in the medical record to support a finding [that] these conditions have resulted in a severe impairment or combination of impairments lasting 12 consecutive months or longer. [Plaintiff] has no restrictions in activities of daily living, mild difficulty maintaining social functioning, concentration, persistence, and pace with no episodes of decompensation. The C criteria are not met. This is consistent with the findings and opinions of the consultative examiner [Dr. Reznick] at Exhibit 22F [AR 405-12], as well as the opinions of the [testifying] medical expert, Dr. William DeBolt who is board certified in neurology and psychology, and the State Agency review psychiatrists.

(AR 15-16).

## 3. Analysis

Plaintiff contends that reversal or remand is warranted because the ALJ failed to find a severe mental impairment at step two. (Plaintiff's Motion at 5).

Specifically, plaintiff argues that the ALJ's findings at step two are erroneous because Dr. Amador's opinions in his March 6, 2008 psychiatric re-assessment, and September 4, 2007[15] narrative report demonstrate that plaintiff's mental impairments have more than a minimal effect on plaintiff's ability to work. (Plaintiff's Motion at 5) (citing AR 416, 418, 423). The Court finds that the ALJ's step two findings are free from material error and are supported by substantial evidence.

The record medical evidence clearly supports the ALJ's determination at step two that plaintiff did not have a severe mental impairment. In determining whether or not a plaintiff's mental impairment is severe, ALJs are to determine the degree of limitation in the following four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. If the degree of limitation in these four areas is determined to be "mild," a plaintiff's mental impairment is generally not severe, unless there is evidence indicating a more than minimal limitation in his ability to perform basic work activities.[16] See 20 C.F.R. §§ 404.1520a(c)-(d), 416.920a(c)-(d). Here, the ALJ found no limitations in plaintiff's activities of daily living, only mild limitations in plaintiff's social functioning, concentration, persistence, and pace, and no episodes of decompensation. (AR 16). Therefore, the ALJ properly concluded that plaintiff did not have a severe mental impairment. See 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1). Substantial medical evidence supports the ALJ's conclusion. As the ALJ noted, his findings are consistent with Dr. Reznick's opinions that plaintiff had only mild difficulties in his ability to tolerate

---

[15]Although plaintiff states that Dr. Amador's narrative report is dated August 7, 2007 (Plaintiff's Motion at 5), the report to which plaintiff cites is dated September 4, 2007. (AR 423).

[16]Basic work activities include: (1) understanding, carrying out, and remembering simple instructions; (2) responding appropriately to supervision, co-workers and usual work situations; and (3) dealing with changes in a routine work setting. See 20 C.F.R. §§ 404.1521, 416.921.

ordinary work pressures and interact with others in the workplace. (AR 16, 411-12). In addition, Dr. DeBolt, Dr. Cordrey, and the state agency reviewing psychiatrists all found that plaintiff did not have a severe mental impairment. (AR 105-107, 292, 300, 309, 310-11). As discussed above, these medical opinions constitute substantial evidence which supports the ALJ's findings. See Tonapetyan, 242 F.3d at 1149; Andrews, 53 F.3d at 1041.

Dr. Amador's opinions do not undercut the ALJ's findings. Although Dr. Amador opined in his March 6, 2008 psychiatric re-assessment that plaintiff had certain cognitive or emotional problems, as discussed above, the ALJ rejected those opinions based on specific and legitimate, clear and convincing reasons supported by substantial evidence. Likewise, the ALJ also properly discounted the opinions expressed in Dr. Amador's September 4, 2007 narrative report, citing the same valid reasons for doing so – the opinions were inconsistent with the treating physician's own treating records, and contrary to the properly supported findings and opinions expressed by the examining doctors (*i.e.*, Drs. Cordrey and Reznick), the state agency reviewing psychiatrists, and Dr. DeBolt.[17] (AR 19). Moreover, Dr. Amador's March 6, 2008 psychiatric re-assessment and September 4, 2007 narrative report each provide opinions at a point in time outside the relevant periods of alleged disability. Plaintiff fails to demonstrate that Dr. Amador's opinions, even if properly supported, suggest that any functional limitations

---

[17]The ALJ rejected the opinions in Dr. Amador's August 7 narrative report for the following reasons:

> The undersigned has read and considered the statements of disability and inability to work by Dr. Amador at Exhibit[] . . . 24F, pp. 2-4 [AR 421-23]. However, the undersigned finds his assertions are not consistent with his own treatment records at Exhibit 17F [356, 360-62, 365] and 23F [AR 414-19], as well as the examination findings and opinions of the consultative examiners, the State Agency review examiners, and the medical expert. Therefore, the undersigned gives limited probative weight to the findings and opinions of Dr. Amador.

(AR 19).

existed for a continuous period of 12 months or longer within such relevant periods.

Accordingly, a remand or reversal is not warranted on this basis.

**C.    The ALJ Properly Evaluated the Opinions of the Examining Orthopedic Surgeon**

Plaintiff contends that the ALJ inadequately considered or ignored the opinion of Dr. Bunsri Sophon, a consultative orthopedic surgeon who examined plaintiff. (Plaintiff's Motion at 6-7). Specifically, plaintiff alleges that the ALJ ignored Dr. Sophon's opinion that plaintiff was limited to occasional walking on uneven terrain. (Plaintiff's Motion at 7). The Court concludes that a remand or reversal is not warranted on this basis because the ALJ properly rejected Dr. Sophon's opinions for specific and legitimate reasons supported by substantial evidence.

**1.    Additional Pertinent Evidence**

On May 4, 2005, Dr. Sophon performed a complete orthopedic evaluation of plaintiff. (AR 294-98). X-rays taken in connection with the evaluation revealed the following:

> X-rays of both hips taken today reveal triangular shaped sclerotic change over the superior portion of both femoral heads. There is evidence of irregularity of the articular surface of the femoral head bilaterally and subchondral cystic changes in the femoral head bilaterally. [¶] X-rays of the lumbar spine taken today reveal normal bony structure. There is evidence of early degenerative changes with multiple anterior lateral osteophytes as the L1, L3, and L4 vertebrae.

(AR 298). Based on the x-rays and a physical examination of plaintiff, Dr. Sophon diagnosed plaintiff with osteoarthritis of the bilateral hips, with avascular necrosis of bilateral femoral heads, and osteoarthritis of the lumbar spine. (AR 298). Dr. Sophon opined that plaintiff: (i) could lift and carry 20 pounds

occasionally and 10 pounds frequently; (ii) could sit/stand/walk for six hours out of an eight hour workday; and (iii) was limited to occasional climbing, crawling, and walking on uneven terrain. (AR 298). The ALJ discussed each of Dr. Sophon's findings in his Pre-Remand Decision, expressly noting the examining physician's limitation on plaintiff's ability to walk on uneven terrain, and gave "significant weight" to such opinions. (AR 51).

On May 16, 2005, a non-examining, state agency physician reviewed the medical records and opinion evidence, and determined that plaintiff: (i) could lift and/or carry 20 pounds occasionally, and 10 pounds frequently; (ii) could stand and/or walk about 6 hours in an 8-hour workday; (iii) could sit about 6 hours in an 8-hour workday; (iv) could push and/or pull within weight limits; (v) was limited to occasional climbing, balancing, stooping, kneeling, crouching and crawling; and (vi) could not climb ladders, rope or scaffolds. (AR 300-308). It appears that the reviewing physician was aware of Dr. Sophon's limitation on plaintiff's ability to walk on uneven terrain. (AR 300). The ALJ gave "significant weight" to the state agency physician's determinations, which he noted were consistent with the overall medical evidence.

On February 26, 2008, Dr. Sarah L. Maze, a consultative state agency neurologist, conducted a complete neurological evaluation of plaintiff, and found that plaintiff had no functional limitations. (AR 394-403). The ALJ gave such findings "some significant weight," but declined to adopt Dr. Maze's opinion that plaintiff had no exertional limitations at all in light of "objective evidence of degenerative disease in [plaintiff's] lumbar spine and bilateral hips with subjective complaints of pain treated with Ibuprofen []." (AR 20).

At the June 23, 2008 hearing before the ALJ, Dr. DeBolt testified as follows: (i) plaintiff suffered from degenerative arthritis of the bilateral hips; (ii) plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently; (iii) he could stand and/or walk for 6 hours, and sit for 6 hours in an 8-

hour workday; and (iv) as found by the state agency reviewing physician, plaintiff was limited to occasional climbing, balancing, stooping, kneeling, crouching and crawling, and precluded from climbing ladders, rope or scaffolds.  (AR 105-107).

The ALJ effectively adopted Dr. DeBolt's testimony, stating as follows:

> With regard to the relevant periods, the undersigned finds [Dr. DeBolt's] testimony is considered highly probative and it is given significant weight.  It is consistent with the medical evidence of record, is more restrictive than the most recent consultative examiner's assertions, is based on objective medical evidence, and there is no convincing reason to reject his opinion.

(AR 20).

## 2.    Analysis

Although the ALJ in this case did not discuss at length every piece of evidence in the record, the ALJ was not required to do so.  See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citations omitted).  Here, the ALJ accounted for all significant probative evidence of plaintiff's impairments and limitations.  Reddick v. Chater, 157 F.3d 715, 722-23 (9th Cir. 1998) (ALJ must "fully account[] for the context of materials or all parts of the testimony and reports").  The ALJ stated that he carefully considered "the entire record" and "opinion evidence" in accordance with administration regulations.  (AR 16).  The ALJ thoroughly discussed the examination, x-rays and findings from Dr. Sophon, and expressly mentioned such examining physician's limitations on plaintiff's ability to walk on uneven terrain.  (AR 51) (citing Exhibit 9F [AR 294-98]).  However, while the ALJ gave "significant weight" to Dr. Sophon's opinions, he nonetheless assessed a residual functional capacity that excluded any limitation on plaintiff's ability to walk on uneven terrain.  (AR 16).  A reasonable inference based on the ALJ's thorough discussion and evaluation of the record evidence, is that in determining plaintiff's residual functional capacity, the ALJ resolved any

conflict in the medical opinion evidence in favor of Dr. Maze's most current findings, but also factored into his assessment, in light of Dr. DeBolt's testimony, that plaintiff had some exertional limitations due to osteoarthritis in plaintiff's bilateral hips and lumbar spine, and plaintiff's subjective symptoms of pain (which the ALJ discounted only to the extent they were inconsistent with the assessed residual functional capacity). Dr. DeBolt's testimony, based in part on the conflicting independent findings of Dr. Maze, constituted substantial evidence upon which the ALJ could rely. See Tonapetyan, 242 F.3d at 1149; Andrews, 53 F.3d at 1041. Although the ALJ did not expressly state that he was rejecting Dr. Sophon's opinion regarding plaintiff's ability to walk on uneven terrain, the ALJ met his burden of discounting such opinion by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. See Thomas, 278 F.3d at 957 (9th Cir. 2002) (ALJ can meet burden of rejecting a treating physician's opinion by setting out detailed and thorough summary of facts and conflicting clinical evidence, stating his interpretation thereof, and making findings) (citations and quotations omitted); Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite "magic words" to reject a treating physician opinion – court may draw specific and legitimate inferences from ALJ's opinion).

Accordingly, a remand or reversal on this basis is not warranted.

### D. The ALJ Properly Evaluated Evidence That Plaintiff Used a Cane

#### 1. Additional Pertinent Facts

On October 19 and October 23, 2006, Dr. Emily B. Littman, an examining neuropsychologist, completed a neuropsychological evaluation of plaintiff which included a neuropsychological structured interview of plaintiff and his mother, and

///

///

eighteen objective psychological tests.[18]  (AR 120, 324-32).  Dr. Littman

concluded that plaintiff had significant cognitive loss,[19] but explained that her

findings were inconclusive as to the cause of such mental limitations:

> The question is the etiology.  [Plaintiff] does have a small
>
> abnormal finding on MRI in the cerebellum.  There have been
>
> reports of cognitive changes with cerebellar disruption.
>
> Moreover, he appears to have more widespread symptoms of
>
> which he is not fully aware.  *His need to use a cane* and the tic-
>
> like movements seen at random throughout the evaluation
>
> suggest a more diffuse neurologic process.  [¶]  In addition,
>
> there are symptoms of psychiatric concerns and possible

---

[18]Dr. Littman administered the following tests:  Lateral Dominance Examination, Hand Dynamometer, Finger Tapping Test, LaFayette Pegboard Test, Hooper Visual Organization Test, Trails A and B, Boston Naming Test, H Words, COWAT, Wechsler Adult Intelligence Scale-III, Wechsler Memory Scale-III, Wide Range Achievement Test 4, Conners' Continuous Performance Test, Categories Test, Beck Depression Inventory, Beck Anxiety Inventory, Validity Indicator Profile, and MMPI-2.  (AR 326-27).

[19]Dr. Littman summarized her findings as follows:  (i)  plaintiff's sensory motor, visual spatial, speech, and language functioning were intact; (ii) his intellectual functioning was in the high average to superior rang; (iii) he had deficits in processing speed; (iv) he had significantly low memory functioning, with visual memory worse than verbal memory; and (v) plaintiff's "lack of insight or awareness into his condition and his difficulty in managing activities of daily living suggest that his functioning is even lower than his scores indicate[d]."  (AR 331).  Dr. Littman speculated that plaintiff's cognitive changes could have been caused by a cerebellum abnormality reflected in one of plaintiff's brain MRIs, and/or by other psychiatric concerns and possible substance abuse, and "strongly recommended" further medical and psychiatric evaluation.  (AR 331).

Dr. DeBolt testified that Dr. Littman's conclusions and opinions were completely unsupported by the record medical evidence.  Specifically, Dr. DeBolt testified that Dr. Littman's opinions were unsupported because:  (i) the record contained no evidence of the level of memory dysfunction stated by Dr. Littman; (ii) plaintiff's memory problems were inconsistent with his high IQ; (iii) facts stated in Dr. Littman's report are not present anywhere in the record; (iv) although Dr. Littman's findings were significantly different than those in a prior neuropsychiatric examination, Dr. Littman did not test for malingering or internal inconsistencies.  (AR 118-21).

1    substance abuse, all of which could be contributing to the

2    picture.

3 (AR 331) (emphasis added).

4      With respect to evidence that plaintiff used a cane (*e.g.*, Dr. Littman's

5 reference to "[plaintiff's] need to use a cane"), the ALJ stated simply that "there is

6 nothing in the medical evidence to show that the use of a cane for ambulating is

7 medically necessary or required."  (AR 18).

8            **2.    Analysis**

9      Plaintiff interprets Dr. Littman's reference to plaintiff's need to use a cane

10 as an "objective medical finding[,]" and argues that the ALJ's one-line rejection of

11 such evidence warrants a reversal or remand.  (Plaintiff's Motion at 8).  The Court

12 disagrees.

13      The ALJ was not required to provide any explanation for rejecting evidence

14 that plaintiff used a cane, much less address such evidence in the same manner as

15 competent medical opinion evidence.  An ALJ must provide an explanation only

16 when he rejects "significant probative evidence."  See Vincent, 739 F.2d at

17 1394-95 (citation omitted).  Here, plaintiff points to no significant probative

18 evidence, nor does the Court find any, that his use of a cane was medically

19 necessary, or in any way reflected additional functional limitations not already

20 accounted for in the ALJ's residual functional capacity assessment.  SSR 96-9p

21 (The use of a cane or other "hand-held assistive device" is probative of a

22 plaintiff's functional limitations only if it is medically required.).  Dr. Littman's

23 observation that plaintiff needed to use a cane does not constitute an objective

24 finding that plaintiff's cane was medically required.  See SSR 96-9P (A finding

25 that a hand-held assistive device is medically necessary requires "medical

26 documentation" of the need, supported by an explanation of the circumstances in

27 which it is needed (*e.g.*, "whether all the time, periodically, or only in certain

28 situations; distance and terrain; and any other relevant information").  In any

24

event, as the ALJ noted, Dr. Maze determined that plaintiff actually walked better without a cane. (AR 20; 396). Dr. Maze's conflicting opinion, which was based on an independent examination of plaintiff, provided substantial support for the ALJ's decision to disregard evidence that plaintiff used a cane. Andrews, 53 F.3d at 1041.

Accordingly, a remand  or reversal on this basis is not warranted.

**E.      The ALJ Posed a Complete Hypothetical Question to the Vocational Expert**

Plaintiff contends that a reversal or remand is appropriate because the ALJ erroneously omitted from his hypothetical question posed to the vocational expert evidence of the mental limitations stated in Dr. Amador's March 6, 2008 opinions and evidence that plaintiff required a cane to ambulate. (Plaintiff's Motion at 9-10). The Court disagrees.

An ALJ's hypothetical question posed to a vocational expert must set out all the limitations and restrictions of the particular claimant. Light v. Social Security Administration, 119 F.3d 789, 793 (9th Cir. 1997) (citing Andrews, 53 F.3d at 1044); Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988) ("Hypothetical questions posed to the vocational expert must set out *all* the limitations and restrictions of the particular claimant . . . .") (emphasis in original; citation omitted). However, an ALJ's hypothetical question need not include limitations not supported by substantial evidence in the record. Osenbrock v. Apfel, 240 F.3d 1157, 1163-64 (9th Cir. 2001) (citation omitted).

As discussed above, the ALJ properly rejected Dr. Amador's opinions for specific and legitimate reasons supported by substantial evidence. In addition, plaintiff failed to demonstrate that his use of a cane was medically necessary or reflected significant probative evidence of any functional limitation. Accordingly,

///

///

the ALJ properly omitted such evidence from the hypothetical question posed to the vocational expert.

A remand or reversal on this basis is not warranted.

**V.    CONCLUSION**

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:  February 24, 2010

_____/s/_____
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE